UNITED STATES DISTRICT COURT
SOTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACKIE JACKSON, o/b/o §<br>R.J., a child §<br>   Plaintiff, §<br>  §<br>v. §<br>  §<br>MICHAEL J. ASTRUE §<br>Commissioner of Social Security §<br>   Defendant. | CIVIL ACTION H-08-3656 |

## OPINION ON SUMMARY JUDGMENT

This appeal from the denial of supplemental security income is before the court on plaintiff Jackie Jackson's and Commissioner Michael J. Astrue's cross-motions for summary judgment (Dkts. 16, 18). For the reasons stated below, the court denies Jackson's motion and grants the Commissioner's motion for summary judgment.[1]

### Background

On February 10, 2005, Jackie Jackson applied for social security disability benefits on behalf of her son R.J., alleging that R.J. was a disabled child due to hydrocephalus and intermediate tremors. At the time of Jackson's application, R.J. was one year old. According to Jackson, R.J.'s impairments became disabling at the time of his birth. After her claim was denied initially and upon reconsideration, Jackson filed a timely written request for hearing on November 8, 2005. After a hearing held on November 1, 2007, an Administrative Law Judge (ALJ) denied Jackson's application for benefits. This appeal followed.

---

[1] Both parties have consented to jurisdiction before this magistrate judge for all proceedings, including final judgment. (Dkt. 13.)

## Standard of Review

Federal courts review an ALJ's decision to deny Social Security benefits to determine whether the ALJ applied the proper legal standards and whether the ALJ's decision is supported by substantial evidence. *See Materson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Newton v. Apfel,* 209 F. 3d 448, 452 (5th Cir. 2000). It must be "more than a mere scintilla and less than a preponderance." *See Materson,* 309 F.3d at 272. The court does not re-weigh the evidence, try the questions de novo, or substitute its own judgment for that of the ALJ.

## Disability Evaluation

The Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of eighteen is disabled. *See* 20 C.F.R. § 416.924 (2009). The relevant issues are: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a medically determinable "severe" impairment or combination of impairments that is "severe;" and (3) whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the criteria of a listing for at least twelve months. § 416.924(b)-(d).

In determining whether an impairment or combination of impairments functionally equals a listing, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)

2

(2009). In making this assessment, the ALJ must compare how appropriately, effectively, and independently the claimant performs activities compared to other children of the same age who do not have impairments. *Id.* § 416.926a(b). To functionally equal a listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(d).

A child has a "marked limitation" in a domain when his impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation in a domain when his impairment interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## Analysis

The ALJ found that R.J. was not engaged in substantial gainful activity and had a severe impairment of hydrocephalus.[2] However, he denied the claim at step three, concluding that R.J.'s impairment did not meet or equal the criteria of a listing because he had less than marked limitations in all domains.[3]

Jackson asserts that the ALJ erred in two ways: (1) by finding that R.J. does not have an extreme limitation in the domain of "moving about and manipulating objects" and (2) by denying her repeated requests for testimony from medical experts trained in the field of pediatric neurology.

### 1. Moving About and Manipulating Objects

Jackson alleges that R.J. has an extreme limitation in his ability to move about

---

[2] Tr. at 27.
[3] *Id.* at 27, 30.

3

and manipulate objects. The domain of moving about and manipulating objects takes into consideration how the child moves his body from one place to another and how the child moves and manipulates things. 20 C.F.R. § 416.926a(j) (2009). The regulation describes examples of some limitations considered in this domain and provides that the examples "do not necessarily describe a 'marked' or 'extreme' limitation." *Id.* § 416.926a(j)(3). They are: (1) muscle weakness, joint stiffness, or sensory loss that interferes with motor activities (e.g., unintentionally dropping things), (2) trouble climbing up and down stairs or having jerky or disorganized locomotion or difficulty with balance, (3) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike), (4) difficulty with sequencing hand or finger movements, (5) difficulty with fine motor movement (e.g., gripping or grasping objects), and (6) poor eye-hand coordination when using a pencil or scissors. *Id.* § 416.926a(j)(3).

Substantial evidence supports the ALJ's finding of no extreme limitation in this domain. A June 1, 2004 medical report by Dr. Baumgartner indicates that although R.J. was born with unilateral hydrocephalus and ventriculomegaly on the left side, an MRI and CT scan of R.J.'s brain showed no acute changes or hemorrhage.[4] A study of his carotid arteries showed no abnormalities.[5] An electrocoencephalogram revealed no evidence of discharge.[6] A vision screening showed that R.J.'s eyesight was normal.[7] After R.J. began therapy and rehabilitation, a CT scan at age four and a half months showed mild increase to no change in hydrocephalus and no increase of intracranial

---

[4] *Id.* at 319, 456, 469.
[5] *Id.*
[6] *Id.*
[7] *Id.*

4

pressure.[8]

On a follow-up examination with Dr. James Baumgartner dated September 21, 2004, R.J. was able to sit, smile, and track, and walk with a walker but not "cruise furniture."[9] During that same visit, neurological testing showed that R.J. was awake, alert, and appropriately interactive for his age.[10] In the report, Dr. Baumgartner described R.J.'s cranial nerves as grossly normal and that he moved his extremities with full and symmetric strength.[11] Dr. Baumgartner also noted that R.J had normal muscle bulk and tone and that he withdrew all extremities to light touch.[12]

R.J. continued to undergo treatment through early childhood intervention services and in a March 2005 follow-up visit Dr. Baumgartner noted that he was "doing well" since his last visit.[13] Dr. Baumgartner remarked that R.J. was talking in single words, trying to walk, and crawl, and that there were no other significant interval medical or surgical complaints since his last follow-up visit.[14] A follow-up neurological testing showed almost identical results as previously conducted tests.[15]

In a November 2005 report, Dr. Baumgartner noted that R.J. wore ankle braces, walked at thirteen months, began speaking at eight to nine months, and had been age appropriate in development.[16] Once again, neurological testing produced the same results as previous tests.[17] Dr. Baumgartner also wrote that R.J. "reaches for and actively

---

[8] *Id.* at 160-161, 704.
[9] *Id.* at 162.
[10] *Id.* at 160.
[11] *Id.* at 160-162.
[12] *Id.* at 160.
[13] *Id.* at 723.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 713.
[17] *Id.*

manipulates objects with both hands."[18]

In August 2007, R.J. was seen by a consultative physician, Dr. Daryl Daniel, who indicated that R.J. had no "physical, functional, emotional, or psychological complications or limitations."[19] Although Dr. Daniel described R.J. as having a "somewhat erratic jerking gait" and walking "irregular[ly] where he does walk on his tiptoes,"[20] he noted that R.J. appeared "to be very well compensated without the use of a cane, crutch, walker or any other assistive device outside of shoe inserts."[21] According to Dr. Daniel, R.J. attempted to care for himself with getting dressed and hygienic activities and had good interaction with other children his age, siblings, and adults;[22] he appeared to think, concentrate, react, interact, and speak consistently with a child his age;[23] he had no difficulty sitting, stooping, squatting or bending and his cranial nerves were intact with no abnormality in deep tendon reflexes, sensory, grip, strength, or range of motion;[24] and his "attention span, affect, speech, hearing, conversation and level of understanding" appeared to be "unremarkable."[25] Dr. Daniel concluded that R.J. was well compensated in all areas of general physical condition and abilities,[26] his extensive physical, speech, and rehabilitation therapy seemed to have improved his functional abilities,[27] and that he did not display any neurological deficits and was able to function in all physical and

---

[18] *Id.*
[19] *Id.* at 707.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 706.
[23] *Id.*
[24] *Id.* at 707.
[25] *Id.* at 706.
[26] *Id.* at 705-707.
[27] *Id.* at 707.

emotional areas equivalent to a child his age.[28]

Nothing in Dr. Daniel's report indicates any evidence of an extreme limitation in the domain of moving about and manipulating objects. Nor does any other evidence show that R.J.'s extreme impairment of hydrocephalus has significantly interfered with his ability to independently initiate, sustain, or complete activities, such as moving his body from one place to another and "moving about and manipulating objects." 20 C.F.R. §§ 416.926a(e)(2)(i) (2009). The ALJ's decision that R.J. does not have an extreme limitation in the domain of moving about and manipulating objects was therefore supported by substantial evidence.

### 2. Medical Expert Testimony

Jackson claims that the ALJ erred in denying her request for medical expert testimony despite the "complicated nature of R.J.'s neurological impairments."[29] The decision to obtain expert medical testimony is not mandatory, however, and the ALJ has complete discretion in deciding whether to obtain medical expert testimony. 20 C.F.R. § 416.927(f)(2)(iii) (2009). In this case, the objective medical evidence and nonmedical evidence was sufficient for the ALJ to determine the severity of R.J.'s impairment without medical expert testimony. The treatment notes from R.J.'s treating physician, Dr. Baumgarten, and the findings of consulting physician Dr. Daniel showed that R.J. had minimal functional limitations, had made good progress through therapy, and was well adjusted for a child his age.[30] Other examination reports and evaluations demonstrated that R.J. does not need an assistive walking device besides shoe inserts and no signs of

---

[28] *Id.*
[29] *See* Pl.'s Br. at 11.
[30] Tr. at 160-163, 705-707.

7

neurological deficits.[31] Medical evaluations indicated that R.J. was able to reach for and manipulate objects with his hands.[32]

Jackson also alleges that additional medical expert testimony was needed because R.J. suffered a seizure two years after the agency consultant offered her opinion. The ALJ considered this evidence and found it immaterial.[33] An EEG and MRI study performed after R.J.'s seizure revealed no abnormalities.[34] R.J. was discharged from the hospital in good condition and without prescribed medication.[35] At the time of the ALJ's decision, he also had not suffered another seizure.[36] Because the ALJ found that the new evidence about R.J.'s seizure would not have changed the state agency medical consultant's conclusion, he was not required to order updated medical expert testimony. *See* Social Security Ruling (SSR) 96-6p ("[I]t is clear that when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's finding, an updated medical opinion regarding disability is required.") (emphasis added).

## Conclusion

Jackson has failed to show that the ALJ's decision contains an error of law or is not supported by substantial evidence. Jackson's motion for summary judgment is denied and the Commissioner's motion for summary judgment granted. The ALJ's decision is affirmed. The Court will issue a separate final judgment.

Signed at Houston, Texas on June 30, 2009.

---

[31] *Id.* at 160, 162, 473, 477, 705-707, 713, 723.
[32] *Id.* at 713.
[33] *Id.* at 29.
[34] *Id.* at 683, 689-690.
[35] *Id.* at 29, 688.
[36] *Id.*

_____
Stephen Wm. Smith
United States Magistrate Judge